SMITH, Adm'r. of TAYLOR vs. NEWBY.

1. In the year 1841, A was residing in the State of Virginia, and owned a negro woman. In the month of March of that year, B stole the woman, and took her to a point near the line between Virginia and Kentucky. At this place, C, a creditor of B, and a citizen of this State, purchased the woman from B, and immediately brought her to this State. C afterwards sold the woman to D, who sold her to E, who sold her to defendant. A died in Virginia, in February, 1846, having never ascertained where his slave was. Plaintiff became the administrator of A, in this State, on the 2d of April, 1847, and instituted this suit on the 8th of the same month, for two children of the woman; having ascertained the above facts after the death of A. Held, that the statute of limitations commenced running against A from the time B returned to this State with the woman. That, although A did not know where his slave was, and was ignorant of the facts necessary to enable him to institute suit that ignorance was not occasioned by the improper conduct of the defendant, and did not deprive defendant of protection under the act. That A having died within five years after his cause of action accrued in order to prevent a bar by limitation, plaintiff should have commenced his suit within one year after his death. That it was not necessary for the defendant to make out five years possession by himself in order to get the benefit of the statute; but that it is the *failure by the plaintiff* to institute suit within the prescribed time that constitutes the bar.

2. It is the settled construction of acts of limitation, that when the act commences to run nothing stops it.

3. Absence from, or non-residence of a plaintiff in this State, does not prevent the running the statute of limitations.

SMITH, Adm'r. of TAYLOR vs. NEWBY.

## APPEAL FROM PLATTE CIRCUIT COURT:

### STATEMENT OF THE CASE.

This is an action of detinue brought by the appellant against the appellee, to remove two negro boys, upon the following state of the case, as shown by the evidence on the trial.

The deceased, William M. Taylor, in his life time, in York county, Virginia, owned a negro woman named Louisa. About the spring of 1841, this negro woman disappeared—supposed to have run away, and to have run away with a strange white man, who had been in the neighborhood, and who disappeared apout the same time. In the month of March, 1841, one Burgess, a resident of Platte county, Missouri, and then on a visit to Kentucky, near the line which separates that State from Virginia, hearing that one Gowens, who was largely indebted to him, was just across the line, in Virginia, with a negro boy in his possession, determined to go and get the boy from Gowens, in the way of his demand, by the best means he could. He went across, found Gowens and the boy, and succeeded in inducing him to let him have the boy in the way of his indebtedness, at the extravagant price of $800. This took place from the 15th to the 20th March, 1841, not later than the 20th. Burgess immediately returned to Kentucky, and thence forthwith to Missouri, taking with him the negro. On his way to Missouri he discovered the negro was a woman in man's clothing. After his return to Missouri, Burgess sold the negro woman to one Allen; Allen sold her to Tetherwoods, and he sold her to defendant. The two boys sued for are the children of Louisa, born after she came to Missouri. William M. Taylor died in Virginia about the last of February, 1846, and the plaintiff became his administrator in this State 2nd April, 1847. Suit was commenced 8th April, 1847. It was testified that it was not known where said negroes were until after the death of Taylor.

Upon this state of facts, the appellant asked the following instructions:

1. "If the jury believe from the evidence that the negro woman, Louisa, is the mother of the boys mentioned in the declaration, and that she was the property of William M. Taylor, of Virginia, deceased, at the time of his death, and William Smith, the plaintiff, is his administrator with the will annexed, they will find for the plaintiff."

2. "If they find for the plaintiff, they must find the value of each negro seperately."

3. "That unless Alexander Gowens, at the time he let Burgess have the negro woman, described in the evidence in this case, had good title derived from William M. Taylor, deceased, in his life time, to said negro woman, then said Burgess, by his purchase from him, acquired no title by said purchase."

4. "If the jury believe from the evidence, that the negro woman Louisa, was stolen from William M. Taylor of Virginia, and knowledge of the fact that the negro was in Missouri did not come to Taylor, or his administrator, until five years before the bringing of the suit, they will find that the suit is brought in time to entitle the plaintiff to recover."

5. "That the five years possession by defendant, or those under whom defendant claims, which gives title under the statute of limitation, must be an adverse possession; and if the jury believe from the evidence, that the negro woman Louisa was, about the spring of 1841, stolen from William M. Taylor, dec'd, in his life time, and is the mother of the boys named in the declaration, then said statute of limitations cannot nor did not commence to run in this suit against said Taylor, or his administrator, until he had some knowledge or information of her being in possession of defendant or those under whom he claims."

The appellee asked the following instructions, to wit:

"That if the jury believe from the evidence, that the mother of the boys in the declaration, mentioned, before the birth of said boys, was purchased by one Burgess, in the month of March, 1841, and he sold to one Allen, and Allen, to one Tetherwoods, and he sold to defendant, and said woman and children, have been in possession of said persons, successively claiming

them as their own for five years before said suit was brought, they will find for defendant, unless said Taylor died before the expiration of said five years; but if said Taylor died within said five years, then the action may have been brought after the expiration of said five years, provided it was brought within one year after the death of said Taylor."

The defendant's and the first and second of plaintiffs were given by the court'; the third, fourth and fifth of plaintiffs were refused. To the giving of defendant's and refusing plaintiffs, plaintiff excepted. Whereupon plaintiff took a non suit, and filed his motion to set it aside, which was overruled. The grounds were two. 1. That the court erred in giving and refusing instructions. 2. The court erred in excluding from the jury evidence offered by plaintiff, of the reputation of the neighborhood as to the parentage of the boys sued for.

ALMOND & SPRATT for appellant.

The first question presented by the record is, could defendant, under the evidence in this case, avail himself legitimately of the statute of limitations, as contained in the instruction given by the court at the instance of defendant, and which is based on the 6th section of article 2, of our statute of limitations. Rev. Code, 1845, p. 717. We contend that defendant could not; for although defendant's said instruction is based upon the abstract principles of law contained in said section, (No. 6) still the testimony recited and preserved in the bill of exceptions, shows that the hypothesis contained in said instruction, and contemplated by said section, cannot and does not apply to the case at bar, for the following reasons:

1. To have entitled defendant to have his said instruction, he ought to have shown a suitable case as presented by the evidence; and in determining whether defendant did show such suitable case, it is only necessary to look to the evidence as preserved, and also to look to all the sections of our said act of limitations applicable to said evidence, and by comparing the evidence in this case with said 6th section of 2nd article, and also with the 7th section of same article, and also with the 8th section of the 3rd article of said act, in connection with the 2nd sec. 2nd art. of said act, it will be seen that the two last named sections apply to the case as pointedly as the section first named, and should have prevented the court from giving defendants said instruction. For whether the decision of our supreme court, in the case of King vs. Lane, 7 Mo. R. 241, or the decision in 3 Johnson R. 263, is still the law or not under our revised code of 1845, page 717, sec. 7, before referred to, (and it would seem that the reasoning in said decision is broad enough to embrace this case,) still it is clear from the evidence that the very improper act of Burgess, in purchasing and removing the woman to Missouri, under whose possession, in part, defendant claims title to said negro boys, would and did prevent the statute of limitations from running in his favor, and in fact in favor of any one claiming under him.

2. From the evident meaning of said 7th sec. of 2nd article of our act of limitations aforesaid, the instruction given for the defendant is evidently too broad; for at the time the cause of action herein accrued against the said Burgess, he being a resident of this State, was out of the State, and the limitation of five years, under our, which gives title, did not clearly commence running in his favor 'till his return to this State. The said instruction decides, that said statute commenced running from the time Burgess got possession of said negro woman, in favor of said Burgess and those claiming under him.

3. The cause of action herein, first accrued to Taylor, the deceased, in his life time, who was a resident of Virginia, in the State of Virginia, against Gowens, who was in Virginia, and who was not a resident of Missouri; and the principles laid down in said decisions of King vs. Lane, 7 Mo. R. 241, and in 3 Johnson 263, although said decisions were made under the act of 1825, here apply and would prevent the running of said statute of limitations against Taylor or his legal representatives until he or they should come to the State. Although

the decision in King vs. Lane was made under the act of 1825, which by its letter extends only to non-resident plaintiffs, still the spirit of said decision, and the reasoning of the court, therein, extends the doctrine to defendants, whether resident or non-resident, and seem to be applied by the court to the act of 1835, which is similar to our act of 1845, with this difference; that the act of 1845, confines its operations towards defendants, to those only, who are residents of this State. We are frank to admit, however, that our minds are not clear in reconciling the decision and its reasoning in King vs. Lane with the respective acts of 1825, 1835 and 1845.

4. But the instruction of the court given for defendant is wrong in another point of view. That instruction assumes, that if the possession of Burgess, Allen Titherow & defendant put together, amounted to six years from its commencement to the beginning of this suit, then plaintiff could not recover. Now this position is incorrect; and unless Burgess or Titherow, or defendant had the five years possession required by our statute, to give title, then there is no pretence for pleading the statute of limitations. It is not contended that either Burgess or Allen or Titherow, or defendant separately, had that five years possession, and plaintiff contends that defendant had no right to consolidate their possession in his favor. Perry's Adm'r. vs. Pullam, Haywood 1, p. 16; Elmore vs. Mills, do. p. 359; Bishop vs. Little 3 Greenleaf; Maine R. 405.

5. But even admitting that the defendant had a right to consolidate the possession of said men with his own, in his favor, to make out said period of six years, then surely, if Burgess falls under the operation of the 8th section of the 3rd article of our act of limitations, (R. C. p. 720) defendant is affected by it. And the act of Gowen's from whom the title is derived, by Burgess, hiding out in Virginia with the woman Louisa, dressed in men's clothes, evidently to prevent her from being recognised and recaptured by the true owner, if said woman was stolen from Taylor. as assumed by plaintiff's 4th instruction; and Gowen's known bad character, being known to Burgess, and his act in forcing Gowen's to sell to him by threats, at so high a price, and running her under such suspicious circumstances, to Missouri, in such hot haste, are such improper acts by Burgess as are contemplated by said 8th section, and prevented the statute from running in favor of Burgess at least; because thereby he prevented the true owner from commencing his action in Virginia.

6. Said acts of Burgess, under the circumstances, also constitute such a "concealment" of the property as to prevent the running of the statute 'till Taylor or his legal representatives heard where the woman was. Sec. 8 R. C. 1845, p. 720; Arnold vs. Scott 2 Mo. Rep. 14.

7. But I hold that Burgess, or those claiming under him, upon the supposition that the negro woman Louisa was stolen from Taylor, never had such adverse possession of said woman as gives title under our statute until Taylor, or his legal representatives had a knowledge of that possession. Smoot vs. Walther's adm'rs. 8 Mo. R. 522.

8. Nor did the statute commence running in favor of defendant till there was some one in being capable of suing for said woman and her children, and there was no one in Missouri capable of suing till plaintiff herein administered, and upon the assumption heretofore made that the cause of action did not accrue to Taylor in his lifetime, against defendant, the statute of limitations never commenced running in favor of defendant till plaintiff administered as aforesaid, or till defendant became possessed of Louisa. McDonald adm'r. of Pogue vs. Walton, 1 Mo. R. 521.

DONIPHAN & BALDWIN, for appellee.

1. It no where appears upon the record, that there was evidence of the reputation of the neighborhood as to the parentage of the boys sued for, offered by appellant and excluded by the court.

2. The court did not err in refusing the third, fourth and fifth instructions asked by appellant. The third instruction was inapplicable to the case before the jury; it could have done

the plaintiff no good if it had been given, and the refusing to give it did him no injury ; but it is positively defective and objectionable, in this ; that it assumes the property of William M. Taylor in the negro woman, at the time Burgess purchased her of Gowens, and refers a question of law to the jury, as to the title of Gowens. The fourth and fifth instructions are liable, both of them, to the same objections. Most unquestionably the statute might operate a bar to an action, notwithstanding it may have had its origin in larceny, and the owner's ignorance of where the stolen property was. I take it, that the instruction should have comprehended substantially, what before the recent alteration in pleading, would have been required in a replication. The instructions should have brought the appellant within the saving of the 8th sec. of the 3d article of the statute of limitations, (as that was what was probably intended) and referred the question to the jury as to the prevention of the action. Ignorance as to who had possession of the negroes, could not prevent the running of the statute. Vide Scott vs. Arnold, 3 Mo. R. 14; Barnard & wife vs. Boulware, 5 Mo. R. 454 ; Sneed vs. Hall, 2 A. K. Marshall 22; Thomas vs. White, &c., 3 Little 183, 4 ; Troup vs. Smith's ex'rs. 20 J. R. 33; The introduction of this 8th sec. of the 3rd article of our act was intended as a legislative settlement of the question as to fraud taking a case out of the act,

3. The court did not err in giving the instructions asked by the appellee. That instruction is substantially the law of his side of the case, and it was for the plaintiff, if he conceived himself entitled to any of the savings of the act, to have asked instructions accordingly. Vide Smith vs. Rowree, 3 A. K. Marshall 529, 30. The appellee had a right to avail himself of the running of the statute, from the time when the cause of action first accrued against those under whom he derives his claim, and is not confined to the time when he acquired the slaves, or became liable to the action. Vide Crozier vs. Bryant, adm'r. &c., 4 Bibb 177, 8 ; 3 Chit. Pl., 941 ; see form of plea of the statute ; Hord vs. Walton 2 A. K. Marshall 620.

4. It appears to be a notion of some, based upon the case of King vs. Lane, 7 Mo. Rep. 241, that the statute does not run against absent plaintiffs. The saving in favor of absent plaintiffs, was repealed with the act of 1825, and has not been introduced into the law since. In the 7th sec. of the 2nd art. of our acts of 1835 and 1845, defendants, only, are mentioned. This section is taken from 4 & 5 Orm. The courts of England would have been just as able to create a saving as to absent defendants, by construction, out of the saving in favor of absent plaintiffs, contained in the act of 21 James 1, as our court to create a saving in favor of absent plaintiffs, by construction, out of the 7th sec. of the 2nd art. of our act; but they repeatedly acknowledge their inability to do so. Vide 2 Tomlin. law Dictionary, 467.

NAPTON, J., delivered the opinion of the court.

The question principally discussed in this case, turns upon the construction of the 8th sec. of the 3rd article of our statute of Limitations. That section provides, "that if any person, by absconding or concealing himself, or by any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." It is contended by the plaintiff, that the statute did not commence running against him or his testator, until he had obtained such information in relation to his stolen or runaway slave, as would have enabled him to commence an action. The case of Arnold vs. Scott (2 Mo. R. 14) is cited in support of this pro-

position. The head note of that case is calculated to mislead. The only question in the case was upon a sufficiency of a replication, which averred "that said A. during the space of five years next after the conversion, concealed the said taking and conversion, so that the said S. did not within that time come to the knowledge thereof." This replication was held good. The act of 1825, expressly excepted from its benefit, a defendant who absconded or concealed himself, or removed out of the State, Territory or district, where the cause of action accrued, or who by any other indirect means, defeated or obstructed the bringing of a suit. The concealment of the property converted was clearly such an obstruction. The ignorance of the plaintiff, in relation to his lost property did not constitute the gist of the replication, but the actual concealment of the defendant, which of course was the occasion of that ignorance and thereby prevented a suit.

The questions considered in the case of Troup vs. Smith (20 Johs. R. 32,) and Mass. Turn. Co. vs. Field and others, (3 Mass. R. 201,) and other similar cases, are not important here. Our statute has settled those questions.

Our statute does not protect plaintiffs who are ignorant of the facts necessary to enable them to bring suit, unless that ignorance is occasioned by some improper conduct on the part of defendants. If the defendant absconds or conceals himself, or does any other improper act to prevent the commencement of an action, he is not within the protection of the statute. If he has not done these things, or any of them, he is protected, although, as in the present case, the plaintiff may have been guilty of no laches. Between two parties equally innocent, one of whom must sustain a loss, it is not the policy of the law to interpose.

There is a section of our statute, which makes certain provisions, saving the rights of plaintiffs; but no provision is made for a case like the present. We have no power to interpolate such a saving, even if it were thought equitable and just.

These principles will readily lead to the conclusion that Gowens, the person who stole the slave from Taylor, or who aided her in escaping, was not within the protection of the statute. Nor was Burgess, who purchased of him, if he was a particeps criminis. There were circumstances attending this purchase which certainly might have created suspicion; but it is to be inferred from the course taken at the trial, that this point was not designed to be made before the jury. No instruction was asked, calculated to bring in question, Burgess' conduct. His character was perhaps entirely beyond the reach of suspicion. The instruc-

tion given by the court seems to assume that the purchases of Burgess, Allen, Tetherow, and the defendant were all *bona fide*, and no counter instruction was asked, having any bearing upon the matter in dispute, so far as the honesty and fairness of these four were concerned. The non suit taken, did not result from the refusal of the court to give any instruction on this point, for none was asked.

The statute of Limitations then commenced running in favor of Burgess (if his purchase was bona fide) from the time of his return to this State. The instruction given by the court was, that the statute commenced running from the time Burgess obtained possession of the woman. This was erroneous; for Burgess was a resident of this State, within the 7th section of the 3rd article of the statute, and being temporarily absent at the time of getting the negro woman Louisa into his possession, the plaintiff was not bound to sue him until his return to this State, and the statute did not commence running in his favor until that time. The error is not however important, as the last branch of the instruction, which is drawn from the 6th section of the same article of the act is clearly fatal to the plaintiff's recovery. It makes no difference, whether we calculate the running of the statute from the 20th of March, which is testified to be about the time of the purchase, or a few weeks later when Burgess returned to Missouri since upon either hypothesis, Taylor died within the five years, and the suit was not instituted within a year from the death of Taylor. It would only be putting the parties to unnecessary expense to reverse the judgment for an error of this kind.

It is argued, that the defendant in this case must make out a five years possession of his own, in order to get the benefit of the statute, and that he cannot tack on to his possession the previous possession of Allen, Titherow and Burgess. This is a misapprehension of the statute. The statute says nothing about adverse possession. It is the failure to bring the suit by the plaintiff within the prescribed time which bars, and this bar is effectual, unless the plaintiff brings himself within some of the savings made in his favor or deprives the defendant of the protection of the statute by showing him to be within some of the provisions designed to effect this object. Besides it is the settled construction of these acts of limitation, that when the act commences running nothing stops it.

Another point in the case is, that the absence of the plaintiff from this State prevents the running of the statute. The case of King vs Lane (7th Mo. Rep. 241) is cited; but is totally inapplicable to the

act of 1845.　There is no saving in favor of plaintiffs in this statute, by reason of their non residence, except in the cases enumerated in the 1st section of the 3rd article, and the present is not one of them.　Nonage, insanity, imprisonment and coverture are the only disabilities enumerated in the fifth section of the 2nd article, where all the legislation upon this branch of the subject is to be found, excepting the provisions in the 1st section of the 3rd article in favor of citizens of a foreign country, at war with the United States.　The absence from, or non residence of the plaintiff in this State, did not prevent the running of the statute.

Judgment affirmed.