## DEE *v.* HYLAND ET AL.

THE STATUTE OF LIMITATIONS BEGINS TO RUN AGAINST AN ACTION OF CLAIM
AND DELIVERY for personal property in the open, notorious, and adverse
possession of another, from the time of the commission of the wrongful
act which deprived the owner of his possession, and not from the time
the knowledge of such adverse possession first came to the owner, where
there is no attempt at concealment by the possessor, and no fraud or de-
ceit practiced by him.

APPEAL from the first district court. The statute of limitations provides that actions "can only be commenced as follows:" "Sec. 16. Within three years; * * * third, an action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property." The opinion states the facts.

*Hoge & Jonasson* and *N. Tanner, jun.,* for the appellant.

The question is, Can a man be deprived of his property against his consent, and without any fault or negligence on his part? Formerly, when theft was punished by hanging, the thief was hanged, and the property became forfeited to the crown. Thus the owner lost his property and the thief lost his life, and the only party who derived any benefit was the sovereign.

If our law-makers intended to deprive a person of his property in the manner in which this appellant lost his horse, the law is surely unconstitutional, because it makes a man lose his property without due process of law. Such a statute would favor wrong-doers and give them title to honest men's property by prescription. To uphold such a construction would be to pervert every principle maintained by every sage

of the law from Grotius and Rutherford down to Kent and later authors. The rule is, that :"an obligation rests upon every government to assist the rightful owner of property in securing recovery of that which has been unjustly lost:" 1 Schouler on Pers. Prop. 21, 22, and notes.

But the statute of limitations was not intended to give title to property, except by adverse possession. The word "adverse" implies hostility and antagonism. How can hostility or antagonism arise between persons who never heard of or knew one another? When John Doe sues Richard Roe they become adversaries. But if John Doe filed a complaint in which no defendant was named, the plaintiff could not properly be said to have any adversary in such action.

How could the appellant herein have saved his rights in the premises? Against whom could he have commenced suit before the three years expired? · Is it not true there must have been a want of a party defendant if he had commenced such suit within the term of three years? In such a case the statute has always been regarded as not running. This is both reason and authority. It is sufficient to quote the language of the court in *Richards* v. *Maryland Ins. Co.*, 8 Cranch, 92, where, in speaking of the statute of limitations, it is said: "When cases present themselves in which no laches can be imputed to the plaintiffs, but great injustice would be done by applying to such cases the effect of the statute, the conclusion of reason and of the law is that such cases were not in the mind of the legislature when enacting that law. Such are the cases of a want of parties, plaintiff or defendant, whereby a temporary suspension of legal remedy takes place."

" The intention of the possessor to claim adversely, and the knowledge of that intention on the part of the owner, must coincide in order to give title to personal property by adverse possession:" *Lawson* v. *Cunningham*, 21 Ga. 454; Angell on Limitations, 324; *Ewing* v. *Burnett*, 11 Pet. 53.

In the case of *Union M. & M. Co.* v. *Dangberg*, 2 Saw. 454, speaking of adverse possession, it is said : " Evidence which shows that the use of the defendants lacks the essential and indisputable requisite of acquiescence on the part of the plaintiff prevents the presumption from arising."

In the case of *Weathers* v. *Barksdale*, 30 Ga. 888, 8 U. S. Dig., F, sec. 821, par. 868, it is held that "a claim of title by defendant to property which is in his possession will not amount to a conversion so as to constitute a starting point for the statute of limitations, unless the fact is brought home to the knowledge of the plaintiff." See also 15 La. Ann. 684; 20 Id. 336.

There is no law of market overt in the United States: 10 Pet. 261; *Hoffman* v. *Carow*, 22 Wend. 285.

Although there is a conflict of authority in reference to the matter of demand before suit is brought, still, inasmuch as this question comes up in this court for the first time, it is but proper to expect that this court will weigh the reason of the authority in the light of our own peculiar situation.

There is a preponderance of authorities holding that in cases where the party becomes an innocent purchaser of property tortiously taken, he is entitled to demand before suit.

In the case of *Alvord* v. *Davenport*, 43 Vt. 30, the supreme court of Vermont held that in such case there is no conversion before demand and refusal. See also *Wilkinson et al.* v. *Verity*, L. R., 6 C. P., 206.

The same rule is laid down in New York, Indiana, Iowa, Kentucky, Minnesota, and Illinois: 2 E. D. Smith, 132; 49 N. Y. 259; 5 Sandf. 157; 2 N. Y. 295; 3 Hill (N. Y.), 348; 6 Ind. 455; 17 Id. 94; 4 G. Greene, 24; 7 Bush, 232; 22 Minn. 97; 3 Scam. 579; 13 Ill. 315; Kerr on Fraud and Mistake, 310.

In conclusion, we submit that the principle involved in this case is of great importance. It is of greatest importance to stockmen, taking into consideration the prevalence of horse and cattle stealing, and the facilities which exist for driving off and concealing stock. But we feel confident that this court will not set its hand and seal to a decision which would be regarded as letters patent in favor of wrong-doers, but that this case will be reversed, and that appellant will be awarded his property.

*R. K. Williams*, for the respondents.

The statute is positive and unconditional; it says: "An action for taking, detaining, or injuring any goods or chattels,

including actions for the specific recovery of personal property," can only be commenced within three years: Comp. L. 366, sec. 1110.

The appellent contends that no right of action accrued to him until he made the demand, and that he could not make the demand sooner, because he did not know where or in whose possession the horse was.

Is this law ?   Where and who are the parties entitled by law to notice or demand ?

Cooley on Torts, p. 452, lays it down that where a party has come into the possession of property lawfully or without ·fault, demand is generally necessary before suit against him; but he immediately explains what that means, to wit, where he finds it and retains it for the real owner, or where he obtains possession by the consent of the owner, as bailee, etc.; and then in note 6 to page 453, it is laid down that one who receives possession from another who had no right, and treats the property as his own, is not entitled to demand; and so it has been held in *Gilmore* v. *Newton*, 9 Allen, 171; and also refers to *Trudo* v. *Anderson*, 10 Mich. 357; *Prime* v. *Cobb*, 63 Me. 200; *Shoemaker* v. *Simpson*, 16 Kan. 43; Wells on Replevin, 198, 206–208; *Sargent* v. *Stevens*, 23 Cal. 360.

And Wells says: "Where the defendant sets up a claim to ownership and demands a return of the goods, this claim is inconsistent with any hypothesis that he would surrender them on demand, and will obviate the necessity of proving demand:" Wells on Replevin, 212, sec. 374, and numerous authorities referred to in note 6.

Whilst it may be conceded that there is some conflict of authorities on this question of the necessity of demand, yet the great weight of authorities and the true philosophy of the rule establish that where no title passes to the original wrong-doer, neither he nor those holding under him, however remote, are entitled to demand for the truly legal reason that he and all those setting up his title are tort-feasors, guilty of conversion of plaintiff's property and liable to an action without demand, and that good faith on the part of any is no defense to the action in such a case.

And in this very action the respondents are sued for tortiously taking plaintiff's property, in other words, the

action is in the *cepit* and not in *detinet* alone; and the respondents defend on this title acquired first by purchase, and then their adverse holding until plaintiff's action has been barred by lapse of time.

The plaintiff's right of action against these respondents accrued instantly on their purchase from Parsons & Cave, and against them on their purchase from Kimball & Richardson.

Respondents had had actual adverse possession of said horse over three years when the action was brought, and when connected with the adverse claim and holding of their vendors, Parsons & Cave, over four years.

The statute in relation to the taking, detaining, etc., of personal property has no conditions nor saving clause, but positively bars plaintiff's right of recovery after three years from the accrual of the right of action.

The first taker of this horse was a wrong-doer, and the right of action accrued against him at once and without demand; his vendee stood in no better attitude legally, although he may morally; but each succeeding vendee became a conversioner, because no title had ever passed from the true owner, and as against any one setting up an adverse title he had immediate right of action without demand; and from the moment the right of action accrued, the statute of limitations began to run, and the right of action had been barred when this suit was begun.

TWISS, J.:

This is an action for the recovery of the possession of a horse, alleged to be the property of the plaintiff, with a prayer for judgment against the defendant for the possession of the horse, in case possession can be had, but if possession thereof could not be had, then in such case for the value of the horse.

Among other defenses, the statute of limitations was pleaded. A trial by jury was waived, and the case tried by the court.

Evidence was properly admitted at the trial upon which the court found the following facts: "The plaintiff purchased the horse in question in 1873, and used him until May, 1877,

then put him out to pasture. The horse disappeared in June, 1877. Plaintiff spent several days with others in looking for him, and notified the sheriff of Weber county of his loss, and desired him to keep watch for him, and also notified his friends among ranchers and cattlemen. The plaintiff never saw the horse again until he saw him in the possession of the defendants in Ogden, on the twenty-eighth or twenty-ninth day of September, A. D. 1881, at which time he demanded possession of the horse, and upon their refusal commenced this action. * * * The defendants bought the horse of Parsons, in March, 1878, and have used him on their ranch in Box Elder county, ever since, just as they used their other horses. There has been no effort on their part to conceal the horse, neither has he been concealed, but their possession has been open and notorious. Parsons, of whom the defendants purchased, bought the horse of Kimball & Richardson prior to the tenth day of September, 1877, and Parsons' possession had also been open and notorious." And finds as a conclusion of law that the statute of limitations pleaded by the defendants had run against the claim of the plaintiff, and that he is not entitled to recover the horse in this form of action, and that the defendants are entitled to the return of the horse, and in case return can not be had, to a judgment for its value.

This case is to be distinguished from those in which the action is based upon a fraud committed by the defendant upon the plaintiff, who, by reason of the fraudulent or wrongful conduct of the defendant, never discovers the fraud, and has no knowledge of a right of action until after the period of limitation has passed, like *First Massachusetts Turnpike Corp.* v. *Field,* 3 Mass. 201; *Bailey* v. *Glover et al.,* 21 Wall. 342; *Atlantic National Bank* v. *Harris,* 118 Mass. 143; in these and similar cases, the plaintiff, by reason of the concealment on the part of the defendant, did not know of the injury or fraud committed until after the expiration of the statutory limitation; and the question as to the application of the statute was between the wrong-doer upon one side and the injured party upon the other. It would seem in such cases that justice and a sense of common honesty ought to prevent a person from using this statute as a means of successfully practicing a fraud upon his victim, unconscious

of the wrong perpetrated upon and concealed from him. In the case at bar, the plaintiff knew he had lost possession of his horse, but did not know whether it was dead or alive; and if alive, whether it had strayed or been stolen, or where it was, or who, if any one, had possession of it. While this was the state of facts as to the plaintiff, the defendants and their vendors purchased, held, and used the horse in good faith, making no effort to conceal it, either from the plaintiff or any other person; their possession had been notorious more than three years before the plaintiff knew who had the horse, or made a demand for its possession. Which of these parties, plaintiff or defendants, both innocent and without fault, must be the loser? It is not claimed that the horse was impounded and sold as an estray under the statute. The conclusion is therefore inevitable that some person, after the horse was turned out to pasture by the plaintiff, in June, 1877, wrongfully converted it to his own use, before it was sold to Kimball & Richardson in the following September; and although the horse was honestly purchased by the defendants and their vendors, yet the possession and use of it by them was a wrong upon and in violation of the rights of the plaintiff from the time they respectively received it, for which he had a remedy by action at law for an unlawful conversion to their use: *Gilmore* v. *Newton*, 9 Allen, 171; *Trudo* v. *Anderson*, 10 Mich. 357.

Does the fact that the plaintiff did not know who had the horse nor where it was affect the rights of either party to this action as to the application of the statute of limitations pleaded as a bar? The statute contains no exception exempting plaintiffs, who are ignorant of the facts necessary to give them a right of action, from its limitations, and there is none implied by law, unless that ignorance is occasioned by some improper conduct of the defendant: *Smith* v. *Newby*, 13 Mo. 159.

Where there is no proof of fraud on the part of the defendant, the general rule is, that the time of limitation runs from the time of the commission of the wrongful act, or the right of action accrues, and not from the time of the knowledge of the act by the plaintiff, there being no proof of any wrongful conduct on the part of the defendant, by means of

which that knowledge is concealed from the plaintiff: Addison on Torts, 1164; *Jordan* v. *Jordan*, 4 Greenl. 175; *Thomas* v. *White*, 3 Litt. 177.

*Wells* v. *Halpin*, 59 Mo. 92, was an action in the nature of replevin, and the only defense relied on was the statute of limitations; the court, quoting from *Foley* v. *Jones*, 52 Id. 64, say: "It may be conceded that the statute does not protect plaintiffs who are ignorant of the facts necessary to enable them to bring suits, unless that ignorance is occasioned by some improper conduct on the part of the defendant," and then proceeds as follows: "This is now the uniform construction, and no reason is perceived warranting a departure from it." The same doctrine is maintained in Wood on Limitations, 382, and numerous authorities are cited in its support.

The judgment of the district court is affirmed.

HUNTER, C. J., and EMERSON, J., concurred.