**Paul E. WILLIAMS, Plaintiff in Error,**

v.

**HARPER BROTHERS AUTOMOBILE DEALERS, W. F. Cuthbert, Gregory Motor Company, C. H. Thomas, Terry Gibson, Galloway Motor Company and Malcolm McComas, Defendants in Error.**

No. 36180.

Supreme Court of Oklahoma.

Sept. 14, 1954.

Rehearing Denied Nov. 9, 1954.

J. Harold Land, Sam S. Gill, R. W. Fleak, Oklahoma City, for plaintiff in error.

Claude V. Thompson, Ada, for defendants in error.

BLACKBIRD, Justice.

The present action constitutes an effort by plaintiff in error, as plaintiff, to recover damages for conversion of his 1948 Model Buick automobile. According to his affidavit, one Martin Evans has admitted stealing it from him at Toledo, Ohio, on November 28th or 29th, in 1948. When Evans' son, Martin Evans, Jr., brought the automobile to Durant, Oklahoma, the following month and sold it to Harper Brothers, used car dealers of that city, the title papers he delivered to said purchaser falsely represented that it was a Michigan car, and that the certificate of title on the form used in said state had been originally issued to a physician and his wife of Detroit and later assigned by them to the City Body Shop of Ypsilanti, Michigan, and thereafter, on September 28, 1948, assigned by said body shop to Newman Motor Sales of Maybee, Michigan. The original motor number stamped on the motor at the Buick factory had been obliterated and a new motor number corresponding with that shown on the Michigan certificate of title had been stamped in its place. With said Michigan certificate of title and the aforesaid assignments on its back, Martin Evans, Jr., presented to Joe Harper, who handled the purchase for Harper Brothers, two additional assignments of title on forms apparently approved and prescribed by Michigan statute. According to the testimony of Joe

Harper and an exhibit introduced in evidence, such forms were entitled: "Re-Assignments By Registered Motor Vehicle Dealer", and one of them ostensibly effected an assignment of the title from Newman Motor Sales to Martin Evans and the other purported to be an assignment from Evans to Harper Brothers. Neither of the latter two assignments were introduced in evidence but Harper's testimony concerning them is undisputed, and it is nowhere shown that any of such title papers were in any respect irregular on their face or that there was any circumstance connected with their appearance or execution to put Harper on notice that they did not evidence genuine and valid transfers of title to the particular automobile Evans delivered to him. And in this connection, Harper testified that he knew Martin Evans, from his previous dealings with Durant dealers, to be a Michigan used auto or "motor vehicle" dealer.

At the time Martin Evans, Jr., delivered the Buick to Harper Brothers, its first Oklahoma purchaser, together with the above-described title papers, Joe Harper paid him $2,050 for it. This was within $155 of the car's original retail price. According to the application introduced in evidence, Harper Brothers, again through Joe Harper as their legal agent, applied twelve days after said sale, or on December 16, 1948, to the tag agent at Durant for the first Oklahoma registration of the car, and, on the same date, they were issued an Oklahoma certificate of title to it and an Oklahoma license tag bearing a Pottawatomie County number. (According to the testimony, the reason the tag bore a Pottawatomie County, instead of a Bryan County number is that all of the tags bearing the latter county's numbers had been sold and the Oklahoma Tax Commission, as was its custom in such situations, had authorized the use of tags originally manufactured for other counties, but not then in use). Thereafter, Harper Brothers sold the Buick to Messrs. Chick Davis and Cecil Pullen of Elk City, but their names do not appear on any of the title papers of the car and it appears from Joe Harper's testimony that when he executed and delivered to these buyers the as-signment dated February 10th, 1949, on the back of the Oklahoma certificate of title previously issued to him in December, no assignee's name was written into the space provided for that purpose. This enabled Davis and Pullen, when they thereafter sold the car to W. F. Cuthbert of Elk City, to effect transfer of the paper title to said purchaser by merely filling his name into the blank provided for that purpose. This practice was termed "title jumping" by at least one of the witnesses at the trial and it was indicated that such practice is not infrequently engaged in by used car dealers.

Some of the evidence at the trial seems to raise a question as to whether the car was ever legitimately licensed in Oklahoma for the year 1949. When Cuthbert applied for his 1950 license, the 1949 license number shown on his application was a Pottawatomie County one (No. 6–9472) originally issued February 25, 1949, to one Claud T. Hall of Maud, Oklahoma, for a Chevrolet automobile, and shown by the Oklahoma Tax Commission's records to have been replaced by a new tag with a different duplicate tag number issued to Hall on or about July 4, 1949, after the latter had filed an affidavit that his original tag had been lost. In his testimony, Cuthbert shed no light on the matter except to say that he didn't believe he ever applied for any license on the car except the one for 1950. He further testified that when he consented to buy the car from Davis and Pullen, they agreed that it would have a 1949 license.

After driving the car approximately sixteen months in his work as a general contractor, Cuthbert, on June 8, 1950, traded it in to Gregory Motor Company of Elk City, on a new 1950 Model Buick. Gregory Motor Company then, on the same day, sold it to C. H. Thomas of that City and also accomplished a "title jump" by obtaining an assignment of Cuthbert's title executed by him in blank so that Thomas' name was filled in said assignment as the assignee and Gregory Motor Company's name never appeared thereon. In September, 1950, Thomas had the Buick repainted, changing its color from its original gun-metal gray to a color called "mist green". Later, in June, 1951, Thomas traded it in to Galloway Mo-

tor Company of Elk City, on a 1949 Model Buick. After displaying it on its used car lot in Elk City for approximately a month, Galloway Motor Company sold it to one Terry Gibson in July, and, upon his default in making the payments thereon, repossessed it in October of the same year and immediately resold it to one Melvin McComas, also of Elk City. The Buick was in the latter's wife's possession when, on January 17, 1952, James R. Sullivan, a Special Agent for the National Automobile Theft Bureau, during the course of his investigation of the car's theft, found it, took it to a garage there at Elk City, and, with the help of a mechanic, removed various parts of the car, including a part of the motor, and, after examining various clues thus discovered, including what he termed a "duplicate" or "secret" motor number, identified the car as the one that had been stolen from plaintiff more than three and a half years previously at Toledo, Ohio.

Thereafter, with evidence gathered by Sullivan, plaintiff, on October 2, 1952, commenced the present action for damages for conversion of the Buick, against not only McComas or "McCombs", the then owner of the car, but also joined as defendants in said action, all of the above named individuals and automobile dealers who had purchased and/or sold the car, after it was brought to Oklahoma, except Chick Davis and Cecil Pullen.

Upon trial of the action, without a jury, the trial court sustained the defendants' plea that plaintiff's action was barred by the two year statute of limitations, and rendered judgment for them. Plaintiff has lodged the present appeal. In dealing with the questions involved herein, we will continue our reference to the parties by their trial court designations.

■ Defendants say that the trial court's judgment should be affirmed upon authority of Burroughs Adding Machine Co. v. Bivens-Corhn Co., 189 Okl. 616, 119 P.2d 58, which enunciates the following principle:

"The statute of limitations as to personal property, though stolen; when held in good faith for value, openly and notoriously, runs in favor of such adverse possession so as to bar a recovery by the true owner after the expiration of two years."

In the cited case we sustained a judgment for Bivens-Corhn Company of Ardmore in a replevin action brought against it by the Adding Machine Company to recover a typewriter that had been stolen from the latter previous to September 22, 1934, on which date it was purchased by BivensCorhn Company. The machine remained in its office thereafter until sometime in 1939, when it was identified as stolen by plaintiff's agent who had been called there to service it. The above quoted principle was applied upon a finding by this Court that the evidence reasonably tended to prove that: "defendant purchased the typewriter in good faith for a valuable consideration and kept it in plain and open view in its place of business" for longer than the two-year limitation period "and never attempted to conceal the facts with reference to" its purchase.

Plaintiff attempts to demonstrate error in the application of the above rule to the present case by endeavoring to show that the defendants, principally Harper Brothers, did not possess the attributes of a bona fide purchaser; and, that in some of the transfers of the automobile after it was brought into Oklahoma, our motor vehicle registration, licensing, and taxing statutes were violated. Counsel never makes the unequivocal assertion that the manner in which these transfers of title were effected, or two of the links in the chain of paper title were "jumped", constituted "concealment" under the above rule, but that is their plain implication. They also emphasize the repainting of the car as if that had been done in an effort to conceal its true identity and prevent its discovery. In connection with this argument, our attention is called to certain portions of Title 47 O.S.1951, namely: Section 23.3 providing that applications for motor vehicle titles in this State shall include the "manufacturer's number", the motor number, and the date on which the vehicle was first sold by the manufacturer or dealer to the owner, together with a statement of the applicant's source of title; see 23.6, providing that upon the sale

of such vehicle, any holder of the certificate of title thereto, including dealers, shall endorse on the back thereof a "complete" assignment thereof sworn to before a person legally authorized to take acknowledgments and "deliver same to the purchaser or transferee at the time of the delivery to him of such vehicle", and requiring all purchasers, *except licensed used car dealers,* to present such assigned certificate to the proper licensing agent within ten days thereafter and pay a fee of $1 and any excise tax or license fee due thereon for the issuance to him of a new certificate of title; Section 23.11 making certain named irregularities in connection with the use of said certificates of title and their assignments and the procuring of tags thereon, and other violations of the Act, misdemeanors; and Section 23.9 rendering guilty of a felony any person altering or forging any such certificate of title or assignment thereof as well as anyone holding or using such certificate or assignment knowing it to be altered or forged.

We agree with counsel that there is evidence in the present case tending to show that in the transfer of the Buick's title hereinbefore referred to, the above statutory provisions were not strictly complied with, but we are not shown, and are unable to discover, any significant relation between such irregularities and the sole issue involved here, namely: Does the two year limitation period prescribed by the Third paragraph of Title 12 O.S.1951 § 95, apply to and bar plaintiff's action? While there are expressions in some of the cases, see Annotations 136 A.L.R. 658, which might be interpreted by some as indicating that if a defendant is guilty of "some improper conduct" (presumably including violation of statutes, like 47 O.S.1951 § 23.3 et seq., supra), he may be denied protection of the limitation statute. However, a thorough analysis of the subject makes it manifest that the use of the quoted term refers only to conduct that conceals, or assists in concealing the conversion, or helps prevent discovery or apprehension of it. Thus in Dee v. Hyland, 3 Utah 308, 3 P. 388, 389, referred to in the Annotations, supra, which involved replevin of a stolen horse, it was said:

"Which of these parties, plaintiff or defendant, both innocent and without fault, must be the loser?

\* \* \* \* \* \*

"Does the fact that the plaintiff did not know who had the horse, nor where it was, affect the rights of either party to this action, as to the statute of limitations pleaded as a bar? The statute contains no exception exempting plaintiffs, who are ignorant of the facts necessary to give them a right of action from its limitations, and there is none implied by law unless that ignorance is occasioned by some improper conduct of the defendant. \* \* \* Where there is no proof of fraud on the part of the defendant, the general rule is that the time of limitation runs from the time of the commission of the wrongful act, or the right of action accrues, and not from the time of the knowledge of the act by the plaintiff, there being no proof of any wrongful conduct on the part of the defendant *by means of which that knowledge is concealed from the plaintiff.*" (Emphasis ours.)

See also 53 Am.Jur., "Trover and Conversion", Sec. 85, and 34 Am.Jur., "Limitation of Actions", Secs. 134–136, both inclusive, and the cases cited in the notes thereto.

█ Here, it was not shown that any act of the defendants to this action (all Oklahoma parties who do not appear to have had anything to do with the car until after it had arrived in this State) in the various changes or transfers either in the possession of the Buick or its title, was an act of concealment within the meaning of the rule, or was performed to, or effected, any concealment of the car or its conversion from plaintiff, or in any way hindered him from discovering either within the two-year period. What we here say also applies to the repainting of the car, about which there is no evidence that it was done to conceal the car's identity or for any reason other than because it actually needed repainting. There is nothing to show that any of the Oklahoma purchasers of the car were not bona fide or purchasers in good faith for value. The conduct of some of the owners

in purchasing and reselling the car without themselves appearing in the chain of paper title to it, referred to in the testimony as "title jumping", while it may have been irregular, and, if so, is not to be condoned, is a practice shown by the testimony to be more or less common, or, at least not infrequent, among those who have dealt in used cars in this State. There is not an iota of testimony tending to show that this practice was engaged in here with the knowledge that the car was stolen property or with any idea or purpose of concealing from plaintiff either its original theft or its subsequent whereabouts. Plaintiff attempted to show that it was the duty of all the car's purchasers, especially Harper Brothers, to have examined the motor number on the vehicle and they say that if this had been done, it could have readily been ascertained that the car's original motor number had been ground away or obliterated and a new one, different from a true Buick factory-stamped number, had been stamped onto the place from which the original had been removed. We think the evidence on this subject, however, is wholly insufficient to support such an assertion and to charge any of the defendants with notice that the Buick was stolen property. Joe Harper testified that it had been his practice to compare the motor number of cars he inspected for purchase, with the motor number shown on the certificates of title presented with them, but he also testified that at the time he purchased this particular car, he had previously purchased only a few such cars. When this is considered with the testimony of Mr. Sullivan, including the latter's description of the technical training and experience necessary to enable him to discover and recognize such motor number changes, we are unable to find sufficient basis for culpability for failing to make such discovery, on the part of Joe Harper or any of the other defendants, or their agents, none of whom appear to have had such specialized training and experience. If, for the sake of argument, we assume that the evidence showed Harper Brothers careless or negligent in such failure, is this sufficient to establish any intention on their part to thereby conceal, or assist in concealing, the theft? The trial court, who observed the witnesses on the stand has, by its judgment, answered this question in the negative, and we cannot say that its judgment is without sufficient evidence to support it. In this connection see Truax v. Capitol Life Ins. Co., 166 Okl. 153, 26 P.2d 755, as applied in Burroughs Adding Machine Co. v. Biven-Corhn Co., supra. We, therefore, cannot agree with plaintiff that under the circumstances the defendants, or any of them, should not have been deemed bona fide or innocent purchasers for value. As the evidence reasonably tends to show that they were such purchasers and that the Buick was sold and resold, used and handled, openly and notoriously, for a period of more than the two years specified in Title 12 O.S.1951 § 95, supra, we find no error in the application to the facts in this case of the rule in the Burroughs Adding Machine case, supra.

The judgment of the trial court is therefore affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON and WILLIAMS, JJ., concur.